UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONIBACH MANAGEMENT TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-600 |
| | § | |
| WARTBURG ENTERPRISES, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Counter-Defendant Jonibach Management Trust, trading as Bumbo International Trust's ("Bumbo") motion for summary judgment. Doc. 107. Bumbo moves for summary judgment of the sole remaining claim in this case, Counter-Plaintiff Wartburg Enterprises, Inc.'s ("Wartburg") breach of contract claim arising out of an alleged oral exclusive-dealing agreement between the parties. *See id*; Doc. 125. Bumbo contends that Wartburg's contract claim is barred by the statute of frauds and, were it not, that Bumbo had a right to cancel or terminate the oral agreement. *Id.*

After considering the motion, the facts of this case, and the applicable law, the Court finds that the statute of frauds bars Wartburg's attempt to enforce the purported oral agreement between the parties and therefore grants Bumbo's motion for summary judgment.

Background

Bumbo, a South African seller of infant products, sold plastic baby seats to its United States distributor, Wartburg, which in turn supplied them to major retailers including Wal-Mart, Toys "R" Us, and Babies "R" Us. This relationship was governed by an oral distributorship agreement under which Wartburg ordered and took possession of Bumbo's products in South

Africa and then shipped the goods to the U.S. for distribution to major retailers. Doc. 30 at 3.

Wartburg alleges that "[i]n late 2007, Bumbo's baby seat was recalled by the Consumer Products Safety Commission." and that "[d]uring the recall period, Bumbo offered Wartburg exclusive or sole distributorship rights in the United States in exchange for Wartburg serving as Bumbo's representative for the purposes of the recall and handling the product issues in the United States with regard to Toys "R" Us, Babies "R" Us, Wal-Mart, and Target." Doc. 120 at 8. There is no written record of the agreement, but Wartburg has introduced the declaration of Mark Buchanan, Vice President of Wartburg, to the same effect. Doc. 120-27. In deposition testimony, Gerhard Wagenaar, Bumbo's representative, denied that such an arrangement existed. Doc. 120-28 at 13, 20. Wartburg asserts that it "accepted this offer and performed by handling all of the recall issues for Bumbo in addition to satisfying the stock issues that existed in relation to the major retailers carrying Bumbo's products." Doc. 120 at 8.

Wartburg had difficulty timely paying for the volume of product it was ordering from Bumbo and, to facilitate an uninterrupted flow of product, negotiated for an extension of credit for its orders. *Id.* at 11. Wartburg additionally asserts that it made concerted and largely successful efforts to reduce its credit balance with Bumbo and, by February 2010 "had reduced its credit balance" to a mutually acceptable level. *Id.* at 12. In contrast, Bumbo contends that "[a]fter several years of extending credit to Wartburg, it became apparent to Bumbo that Wartburg was unable to maintain the volume of product distribution required in the United States" and that "Bumbo's dissatisfaction with Wartburg's ability to maintain distribution volumes was compounded by the fact that Wartburg had amassed a significant trade deficit." Doc. 107-1 at 4.

The parties agree that on February 3, 2010 Bumbo sent Wartburg an email stating that it

was seeking an alternative distributor for its products for Toys "R" Us and Babies "R" Us. Doc. 120-5.

On February 25, 2010, Bumbo filed a complaint against Wartburg seeking specific performance of the oral distribution agreement and the issuance of a preliminary injunction requiring Wartburg to distribute Bumbo's baby seats to certain U.S. retailers. Docs. 1, 3. The temporary injunction was granted. Doc. 8. On March 12, 2010, Wartburg filed a counterclaim against Bumbo for breach of contract, fraud, and quantum meruit. Doc. 15. In response to Bumbo's motion to dismiss (Doc. 23), Wartburg filed an amended counterclaim. Doc. 31.

On February 16, 2011, the Court dismissed with prejudice "[a]ll of Bumbo's claims against Wartburg, as reflected in its First Amended Complaint" and lifted the temporary injunction against Wartburg. Doc. 86 at 1. On February 17, 2011, the Court granted Bumbo's Rule 12(b)(6) motion to dismiss Wartburg's fraud and quantum meruit counterclaims against Bumbo. Doc. 87. Wartburg retained its counterclaim for breach of contract. After various procedural wranglings, as outlined in the Court's opinion and order of March 21, 2012 (Doc. 125), Bumbo moved for summary judgment of Wartburg's remaining breach of contract claim. Doc. 107. Wartburg opposed that motion. Doc. 120.

Legal Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The substantive law governing the suit identifies the essential elements of the claims at

issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Analysis

Wartburg asserts a breach of contract claim against Bumbo arising out of Bumbo's

purported termination of an oral agreement that existed between the parties. Doc. 31. Specifically, Wartburg alleges that Bumbo "refused to sell and/or provide its products to Wartburg for sale to Wartburg's customers[,] . . . demanded that Wartburg only sell its inventory to certain retailers, e.g., WalMart, Toys "R" Us and Babies "R" Us, to the exclusion of Wartburg's other customers, [and] . . . breached the agreement by taking over Wartburg's customer relationships." *Id.* at 8. Bumbo has moved for summary judgment on the grounds that, *inter alia*, Wartburg has failed adequately to allege the existence of an enforceable contract. Doc. 107-1 at 13.

Under Texas law, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Tex. Bus. & Com. Code § 2.201(a). *See Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469 (5th Cir. 2002).

Wartburg makes much of the fact that this Court previously granted Bumbo's motion for a preliminary injunction requiring Wartburg to distribute Bumbo's baby seats to US dealers pursuant to an oral agreement between the parties. *See* Doc. 120 at 32; Doc. 8 at 1, 3. Wartburg's contract claims, however, arise not as a result of any initial oral agreement between the parties, but out of an alleged later oral modification or agreement under which Bumbo granted Wartburg *exclusive* rights to distribute Bumbo seats in the United States. *See* Doc. 120 at 8-9. Although the Court previously granted Bumbo's motion for a preliminary injunction after finding that "Bumbo and Wartburg had a clear course of dealing over several years that strongly suggest[ed] an enforceable oral distribution agreement," (Doc. 8 at 3), the Court made no finding regarding the oral modification to the agreement that forms the basis of this counter-claim.

Wartburg's breach of contract counter-claim arises from the subsequent, unproven oral agreement. That agreement, Wartburg alleges, was for exclusive rights to distribute millions of dollars worth of Bumbo's products. *See* Doc. 120-27 at 3. Wartburg alleges that Bumbo breached the oral agreement by "refusing to sell its products to [Wartburg], by insisting that [Wartburg] only supply Bumbo's products to certain customers/retailers and by taking over [Wartburg's] customer relationships." Doc. 31 at 6. Specifically, according to Wartburg, the breach occurred when Bumbo informed Wartburg via email that it had decided to award an "alternative USA distributor the distribution of Bumbo products to" Toys "R" Us and Babies "R" Us. Doc. 120 at 12; Doc. 120-5 at 1. Wartburg does not allege, nor does the record indicate, that Bumbo refused to continue supplying Bumbo products. Instead, Bumbo merely sought another distributor to handle sales to the large-volume customers which Wartburg previously supplied. Wartburg admits that it was "not prepared to work with another distributor in the USA" and that, in its opinion, "Bumbo terminated the verbal exclusive distributorship agreement by hiring another distributor in the United States." *Id.* Bumbo disputes the existence of the verbal exclusive distributorship agreement (*see* Doc. 120-28 at 13, 20) and Wartburg has introduced no written evidence thereof. Because there is no evidence of a written agreement sufficient to indicate that Wartburg and Bumbo came to terms on an exclusive distributorship agreement, and because that purported exclusive distributorship agreement forms the basis of Wartburg's breach of contract counter-claim, Bumbo is entitled to summary judgment on that claim.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Counter-Defendant Jonibach Management Trust, trading as Bumbo International Trust's motion for summary judgment is **GRANTED.**

SIGNED at Houston, Texas, this 7th day of September, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE